The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, Jackie. Welcome to the Fourth Circuit, even though it's by video. And we're ready to hear our first case, 19-2094, Perdue v. Sanofi-Aventis. Ms. Gessner, we'll hear from you first. Yes, Your Honor. Good afternoon. May it please the Court. I'm Michelle Gessner, and I have the privilege of representing Janet Perdue today in the case that's before you. Thank you for the opportunity to be heard. We're here today, as you know, appealing the District Court's ruling of summary judgment in favor of Sanofi and on Ms. Perdue's Americans with Disability Act claim, as well as her wrongful termination claim. The District Court's errors in this case are reminiscent and similar of the same errors that were made in a case before this Court in 2015, that being the Jacobs v. NCAOC case. In that case, the Court, the Fourth Circuit, recognized that where a motion that is designed simply for identifying trial-worthy issues was improperly used as a vehicle for resolving trial-worthy issues. The same is the situation before you. The District Court in this case construed all the facts in the light most favorable to Sanofi, the moving party, as opposed to looking at the facts in the light most favorable to Ms. Perdue. In fact, the Court went so far as to insert what would happen with those facts and what a jury may find in those facts and forecasting the future. Ms. Perdue and the appellant before you contends that that was clear error. Ms. Perdue had sought a reasonable accommodation from Sanofi as part of her job. She had worked for Sanofi Pharmaceuticals for 16 years. She was a sales rep. She had, at the age of 44, had found herself in the unfortunate position of being diagnosed with an autoimmune disease. And while working for Sanofi back in 2013, she was able to take a leave of absence and miraculously work her way back to full-time employment. In fact, critical in working her way back to full-time employment. Counsel, we're fairly familiar with the facts, and I know since you have limited time, it's up to you on how you want to present, but you may want to move directly to your legal arguments. Yes, Your Honor, we'll do that. In this case, Ms. Perdue's reasonable accommodation should have been granted absent an undue hardship. There was ample facts to show that the request to job-share with another employee pursuant to Sanofi's FlexWorks program was reasonable on its face, primarily because Ms. Perdue had job-shared before, and the FlexWorks program specifically allowed for job-share as a way to accommodate employees to remain employed. Counsel, can you sort of help me here? I assume you agree that if your client had asked Sanofi, requested that they create a new position in Greenville, that that wouldn't be required as a reasonable accommodation. Do you agree with that? Your Honor, under the law, an employer must not create a brand new position, but that is not this case. And so that's where I want to go. So here, as you just described it, you requested a new job-share position, and so help me understand why I shouldn't think of that as the same thing as creating a new position altogether. There was no such position before, and maybe they were certainly permitted under the policy to create that, but it seems to me that there had to be an existing position before we even get to your arguments. Help me understand why this is different. Yes, Your Honor. There was a position in the Greenville market for a sales rep. That was the position held by Caitlin Hunt. The company's own program allowed for that position to be shared under the FlexWorks program. The first step was to check in with HR and confirm that that position was eligible to be shared before even the request could be made, and that box was checked here. Ms. Perdue and Ms. Hunt contacted Sanofi's HR and was told that Mrs. Hunt's position was eligible for sharing. The second piece, which was part of the first, was Ms. Hunt, Ms. Perdue was required to find her own partner. This isn't an instance where Ms. Perdue went to Sanofi and said, create a position for me, find me a partner. Instead, if she had not found another sales rep, Ms. Hunt, who was willing to cut her pay in half, cut her bonus in half, and share the responsibilities ebbing and flowing as one in the same position, Mrs. Perdue would not have had someone to go to Sanofi and make this request. Help me a little bit because you're reaching the different conclusion, but the words you use, it's eligible to be a job share. It could be turned into a job share. All of those suggest something that had not happened at the time that you're making the request. Those were things that could have been done, but there was not a job share position at the time. That's the rub that I'm having. I understand your position to be that this could have been done, that Sanofi had every ability to do this, but I don't think that gets you anywhere. They could create a new position for her. They could have promoted her to CEO. They could have done all sorts of things, but the question is, was there a vacant position, one that existed? If not, you're at a full stop before we get into Ms. Hunt or any of these other facts. Your Honor, if I may, let me step back just for one second. Our position is that the job share didn't even require there to be an open position in order for the company to consider the job share for Ms. Perdue. She wasn't seeking a new job. She simply was seeking to do her current job, a sales rep, in a different territory. This wasn't create a new job for me and plug me in it because I'm disabled. Instead, this was allow me to do my current job, a sales rep, in a different territory. I thought we started this conversation by you agreeing that if she asked for them to create a job in Greenville as a sales rep that was not existing, that they're not required to do that. They're entitled to do that. They're perfectly capable of doing that. If they chose out of the goodness of their heart to do it, that's great. But they're not required to create a position for her as a sales rep in a different geographic area. That's the same problem that you've got. That's what I'm just having trouble understanding the argument. Your Honor, the job share program was akin to a job restructuring and the request to job share with Mrs. Hunt was part of the program that Sanofi itself allowed. The analysis of whether Ms. Perdue should have been given the job share should have been looked at in the context of the ADA. The ADA requires the disabled employee to have an equal opportunity. In this specific instance, Mrs. Perdue was looking for every opportunity to remain employed with Sanofi. There were very few options. One of the options was to work the program that they had, the FlexWorks, and to see what would work. Part-time work in Asheville would not work. The only thing that was available to her was job share. In that context, Sanofi needed to consider job share and only deny if it could show an undue hardship. Here, Sanofi did not do that. The position with Mrs. Hunt was an existing position that a willing employee was willing to give up half of to ebb and flow with Ms. Perdue to make one. And if that created a hardship for Sanofi, it had a legal argument. It didn't make that argument at any point in time in the lower court or even before this court. And if it can, Your Honor, it can do that in front of the jury. But this was an issue that was decided as a matter of law by the judge in this case, by the district court, which was improper. Mrs. Perdue made an argument and made a showing that her request was reasonable on its face, both in a job restructuring, which is absolutely one of the reasonable accommodations cited by Congress, and it is not exclusive, just as cited by this court in Elledge. Job share could be one of the listed factors in reasonable accommodations. And here, the court denied it as a matter of law, despite there being ample evidence that it was reasonable on its face, as well as it did not evade the rights of any other employee. Your Honor, your question is astute in the sense that there was not a single person who was vying for a job share. Job share was not something the company posted. This wasn't an open job that would be eligible or be available to others. An opening was only created when a need occurred and the employee needing the same could find their own willing partner. That's the only time that this would be available is if those elements were met. HR approved it and the person found a willing partner. In this case, there was no other option available for Mrs. Perdue. Importantly, the company did not engage in the interactive process in any way to find other options. Mrs. Perdue did, all the way to the bitter end, look for other solutions once job share was denied. However, Sanofi did nothing and there were no other solutions. Instead, Sanofi post hoc blamed Mrs. Hunt as the reason why it did not accommodate Mrs. Perdue. And there are so many factual issues around that analysis, Your Honor. Our submission is this case should have been rendered to the jury. All right. Thank you, Ms. Gessner. You've got some time left on rebuttal. Ms. Gantz, we'll hear from you. Thank you, Mayor. Please, the court. I just wanted to address the judge's issue about it being a reassignment to a job that didn't exist. So the ADA has a number of options for reasonable accommodation listed in the statute. And what you call it doesn't really matter. So a job share could be a part-time or modified work schedule. It could be job restructuring. It could be seen as an appropriate modification of the company's policy. But the company here has a specific policy that allowed job share. So the key here is that reasonableness and whether an accommodation is reasonable is a general showing. Is the method requested ordinarily in the run of cases feasible? Is it plausible? Is it effective in that? Will it let the plaintiff or the worker perform the essential functions of the job? Then if there are business-related concerns, specific concerns having to do with how the business operates, then that would shift to the defendant to show an undue hardship. And the problem here is the court never shifted. Was there a vacancy here? Job share, by definition, is the splitting of one current job. So the idea of a vacancy doesn't really work here. A vacancy usually is a job that others can compete for or that there might be other employees wanting the job, which is the problem when you run into a seniority system or the kind of best-qualified policy at issue in ELEJ. Here, the job share would not have affected any other employees at Sanofi, and it all was determined by her finding someone willing to take a 50% pay cut and share the job. So there's no vacancy here? Excuse me? That's your answer, there's no vacancy? No, there was. If you want to put it in those terms, the vacancy occurred when Caitlin Hunt agreed to share her job share. So at that point, they submitted a proposal, which the company considered. The company had to, if they didn't want to do the job share, that was certainly in their prerogative, but they had to, through the interactive process, come up with some other reasonable combination, which could have been working part-time, it could have been working full-time closer to home. Can I go back to just make sure I understand your position? Because you started by saying it wasn't a vacant position because people could not apply for it, and then in response to Judge Agee's question, you say it is a vacant position. Sorry, I apologize. Those are like diametrically opposed answers. It's really just a semantic game here. The semantic game we're playing is the statute, right? You can call it a semantic game if you like, but we apply the words of a statute. It's not semantics to us, it's the words of the statute. No, I'm saying the exact type, what you call the reasonable accommodation doesn't matter here. It's a job share, and it can be characterized as a job restructuring or part-time or modified work schedule. Or if you want to stick with the reassignment to a vacant position, you could see it as a reassignment to sharing half of Caitlin Hunt's job, which she agreed to. Counsel, this is Judge Rushing. Hi. Sorry, you can't see me. I'm on the phone. I have a question about this, the idea that it could be job restructuring or a modified work schedule. My understanding is that she was a sales rep in Asheville, and now if she had wanted to job share that position, I might be able to see how maybe that's a modified work schedule, that's restructuring her current job. But if she wants to move to be a sales rep in Greenville, she's not doing her same job. No one's doing her job as a sales rep in Asheville anymore. I don't see how that could be restructuring or modifying the work schedule of her current job if she's moving to a different territory. Her current job is no longer being done, at least not by her. It's now vacant for someone else to do. Correct, Your Honor. But she was performing the same essential functions. She was selling the same drugs. She just wasn't driving an hour and a half each way into the territory, and she had already performed that job in Greenville. Well, it seems like the essential function, I mean, from Sanofi's perspective, the essential function is selling the drug in Asheville. They need someone to sell the drug there, and that's what they've asked her to do. Well, they have not made that argument, Your Honor, that the essential function required being done in Asheville. Hold on a second. Counsel, hold on a second. I think Judge Rushing was still speaking, so let's be careful when the judge is talking to wait until they're finished. I apologize. Judge Rushing? Thank you, Judge Agee. I was just trying to drill down on this perspective. I think only the EEOC raises this. The parties don't raise this. But to the extent you're talking about it being a matter of semantics, we can call it anything we want. I think the fact that no one else is doing her job in Asheville is a reason why we might not be able to call it restructuring or a modified work schedule, and we have to talk about a vacancy. Okay, Your Honor. The company has not suggested that performing the ESP job in Asheville was the essential function of the job, and her own supervisor asked that she be able to do a job share. The company, HR, approved a job share for Greenville, so she's splitting a current job in Greenville. The company isn't paying someone else to do her job, which is what is suggested by creating a new position. I hope I didn't mislead you by saying it's only a matter of semantics. My point was that reasonable combination of the type that is listed in the statute is reasonable here on its face in the run of cases, ordinarily, because the company's flex policy allows for it, and HR had approved the Greenville job for a job share. So the company, to the extent it had concerns about business problems, would be able to show that it created an undue hardship on the operation of its business, but the problem was resolving these factual disputes at the reasonableness stage, where the Supreme Court and Barnett has said that that inquiry is a general examination of whether the method requested is workable. Is it feasible? And then the burden shifts to show that because of the way the company works or because of whatever their concerns are, that it would be an undue hardship, and that is how the duty to accommodate is written in the statute of the ADA. So the duty to accommodate takes what Judge Ruth Bader Ginsburg said, a starring role in the statute. And here, though they have a policy of not granting job share for business reasons, that ordinarily wouldn't be enough to say that the accommodations thought was unreasonable. Instead, they would have to show that on undue hardship. So the problem is the burden. And I wanted to point out, too, because the company never participated in the interactive process— Counsel, you're somewhat over time, so how about bringing it to a close? Thank you. Okay, I'll stop. Thank you very much. All right. Thank you. Ms. Sprain, we'll hear from you. Good afternoon. May it please the Court, I'm Teresa Sprain on behalf of Sanofi. And it's our position that the district court's grant of summary judgment was proper on our motion for summary judgment. And this is because there can be no dispute that Sanofi provided or offered a number of reasonable accommodations. The interactive process here was, in fact, robust. She was given six months of paid leave, a leave that was extended three times in response to notes from her doctor. And her physician confirmed that she could not perform the essential functions of her job in Asheville because she could not travel to North Carolina. And she could not work on a full-time basis. She was given an offer to explore another position in Greenville with Debbie Anderson, the same supervisor that appellant says discriminated against her. She declined that position. She declined the opportunity to pursue that position. She declined hotel stays and said they would not be effective. She declined another car and said that would not be effective. She had an ongoing opportunity to look for other positions in the company. When she could not return to her own position after the six months of leave and had indefinite restrictions, she was released to long-term disability. And Sanofi sent her a letter at that time summarizing those accommodations. Ms. Perdue did not respond to that to dispute it, to deny that that was so. She instead wrote a letter to one of her managers to thank Sanofi for her opportunities and then filed her EEOC charge. And the argument she makes to this court today asks you to hold that in addition to the numerous accommodations that I have outlined, that the ADA required Sanofi to modify the job of a non-disabled employee to accommodate a disabled employee based solely on their unilateral and private decision that they were willing to share the job. And this is not what the law requires. She wants the court to ignore established law. Can you talk for just a second about Judge Rushing's question to the EEOC? They seem to, maybe not exactly, but they come awfully close to conceding that in the EEOC's view, there was no vacant position, but suggest instead that we should refer to this job sharing as restructuring or a modified work schedule. Tell us in your view why the change to Ms. Hunt's job is not restructuring or a modified work schedule that Sanofi was required under the ADA to provide. Because Ms. Hunt is not the disabled employee. Ms. Hunt is an employee who, while it is true, was also interested in applying for a job share, Sanofi had a policy governing how a job share operates. I take EEOC's argument to be that the ADA requires Sanofi to change other people's jobs to the extent necessary to reasonably accommodate Ms. Perdue. Help me understand why the ADA doesn't require Sanofi to just change anybody's job in order to accommodate Ms. Perdue. Right, because the other employees have rights in their positions as well. Regardless of whether they want to yield those rights and say that I would be willing to share, the company still has to determine whether that is an appropriate sharing based on business needs, based on availability, based on the qualifications of principles. The fundamental question here is the position that is at issue to be modified is Caitlin Hunt's. There was no vacancy in Greenville for Janet Perdue. The only way that this could work and which the company did explore and explored in detail was to split Caitlin Hunt's job and allow Janet Perdue to take the other part of it. That in and of itself creates issues with accommodation of Janet Perdue because employers do not need to create a new position. They do not need to assign someone who performs a full-time position to a permanent part-time position. There's no requirement of permanent light duty and employers can follow their non-discriminatory policies. As I mentioned, there was an extensive interactive process and that includes the discussion of this role. Council, if we determined using the terminology of vacancy that there was not ever a vacancy in this case, do the issues of pretext or interactive role come up or does it end with that determination on no vacancy? In our position, it ends because we are talking about restructuring. We're talking about all the issues I outlined that as a matter of law, our courts have held that employers do not need to do as an accommodation. There were some items in the record. I don't know whether they were contested for purposes of summary judgment that related to, but one was to the effect that there had been a text message to Miss Perdue about a position in Greenville to which she never responded. And then there was an offer of hotel accommodations and a different car, I assume for ergonomic purposes, for her use in Asheville. So, I'm assuming that those items would go to interactive process as opposed to any question related to vacancy.  Do you agree, Miss Sprain, that at least in the Fourth Circuit, the interactive process is not an independent claim, that if they fail to show a reasonable accommodation, there's not an independent process claim? That's correct, Your Honor. I agree. And it is the plaintiff or the employee's burden to identify that reasonable accommodation. And the only one that has been identified that Miss Perdue says was not provided to her is this job share, which is the modification of Caitlin Hunt's position. There's not any other one that is outstanding. And it's our position that as a matter of law, that Santa Fe was not required to do it. We have an extensive FlexWorks policy. I need to address the position that HR determined that Caitlin Hunt's position was eligible. Sales rep positions are eligible for job share. But it is the hiring manager's, Caitlin Hunt's manager's decision to make as to whether job share will be approved or not. And as it spells out in the policy, managers will approve or deny based on a number of business factors, including performance issues. I also want to address the issue that was raised that job share had been provided to Miss Perdue in the past. And as we cited at page 24 of our brief, a prior accommodation does not mean that the same accommodation needs to be granted in the future. So while that may be true, I think that is evidence of Santa Fe working with Miss Perdue when it was able and when it could accommodate her. But this accommodation in this circumstance was not reasonable as a matter of law. Is my recollection correct, Miss Sprain, that she was offered a part-time position in Asheville? There was discussion of that that would not work for her. But Santa Fe suggested a part-time position in her current role and she rejected that. I believe that was discussed, but her restrictions would never have permitted her to do that because of the travel. So it wouldn't have been feasible for her. Your Honor asked a question about pretext. And I do not believe that the court needs to reach that issue. But we do want to make clear that if the court were to analyze this case under that framework rather than simply as a reasonable accommodation, that Miss Perdue cannot prevail there either. She has not demonstrated evidence of discrimination. She has not demonstrated that there was pretext. She was evaluated in this process by a manager who sought to give her another job. And it just does not follow that that manager would seek to discriminate against her on the basis of this job. Your Honor, I have covered the points that I wanted to address for the court today. Unless you have questions for me, I'll conclude. Judge Rushing, do you have anything further? No, thank you. Judge Richardson? All right, thank you, Miss Sprain. Ms. Gessner, you've got time on the rebuttal, so we'll hear from you. Yes, Your Honor. Thank you. On the vacancy issue discussed by the court, the law requires the court to look at it really under two scenarios. Was the position vacant or likely to become vacant? Reasonably likely to become vacant. We mentioned that in our briefs. In this instance, from February of 17 until May of 17, everybody believed job share was going to be approved. That is undisputed. The record is rampant with evidence to show that HR approved it. Tim Cole approved job share. It was going to be approved. And, in fact, Ms. Anderson, the decision-maker here, wanted to interview the two applicants for the job share and conducted an extensive interview in April of 2017. An extensive interview in which she pried very in-depth, again, a question of fact, it's Ms. Perdue that she asked in-depth about her disability, and shortly thereafter, the decision is made to deny the job share. So, here, Your Honor, if you're troubled by the vacancy, the law requires to look at what did the employer do. The employer treated the position as likely to become vacant by walking through the process of considering the job share. If job share wasn't a reasonable request, Your Honors, why did they consider it? It's a circular argument. There is precedence, again, persuasive, out of the District of Massachusetts that's cited in the briefs, the Encuto v. Newton Public Schools, that expressly says, if you've job shared before, then it can be deemed reasonable on its face and can only be denied with an undue hardship. At all turns of this case, the company had undue hardship in its quiver, an arrow in its quiver to shoot. It chose not to. Instead, it said, after interviewing Ms. Perdue in person and inquiring at length about her health condition, shortly thereafter denying, the denial was, quote, doesn't meet the business needs. There was never any explanation of undue hardship whatsoever. And, Your Honors, our position is it was reasonable on its face for many reasons, and including a reassignment to this likely to become vacant position that they treated as such a reasonable and could only be denied absent undue hardship. The company did not engage in the interactive process at all. In fact, their own dismissal letter says, we haven't spoken to you since May of 2017. Crabbeville, this court has recognized in Crabbeville, the party who drops the engaging in the interactive process can be deemed engaging in bad faith. Here, Ms. Perdue did, in fact, attempt to get a part-time job or inquire about it through the Reed Group. There was an email at JA 262 from Meredith Hernandez dated May of 2017, May 15th of 2017, where the manager says, this territory cannot accommodate a part-time position, period. It wasn't Ms. Perdue who in any way rejected part-time. Also, Your Honor, an accommodation must be effective in order for it to work. Here, Ms. Perdue's medical provider said, a car or a hotel stay would not allow her to work within her restrictions for her health. It was 30 hours a week in a territory close to home. A new car was not effective. A hotel stay was not effective. And importantly, Your Honors, when HR mentioned this as a potential offer, HR testified they didn't even know it was to accommodate a disability and that it was to just be, quote, a good partner. There was never an offer made whatsoever that would be effective in allowing Ms. Perdue to return to work and have an equal opportunity to keep her job, which is the intention behind the ADA to begin with. Likewise, Your Honor, there was engaging in bad faith. Rather than engaging in the interactive process, Sanofi was digging into Ms. Perdue to determine whether or not her going to school somehow indicated she didn't have a disability and she could work in Asheville. Ms. Perdue, every three weeks, was having her certifications recertified, her medical providers telling Sanofi she could work and looking for other jobs, calling anyone who would listen, the Reed Group, HR, her former managers. There never was a single job opening. Sanofi would like the court to believe that Mrs. Perdue turned down a job. That did not happen. And to the extent there's evidence conflicting, it was a question that should have gone to the jury. Ms. Perdue testified there was a mention in January of 17 about the possibility of an opening back in Greenville. And importantly, Your Honor, she worked in Greenville for 16 years. She was involuntarily moved to have to commute from Greenville to Asheville, a three-hour drive one way back roads. Sanofi admits it wasn't the driving. It wasn't the, quote, windshield time. It was her disability, her hands going numb, her feet going numb that was precluding her from driving. May I continue, Judge Agee? Go right ahead and finish your answer. When that supposed conversation happened in January of 17, Ms. Perdue was asymptomatic. She had returned to 100% capacity. The record is clear. She worked in 2016 at 80% capacity. In September of 16, was back at 100%. When this conversation occurred, Perdue was happy to have a job. She was happy to tackle and try Asheville. It only took about 45 days into the month before her doctor said, you're going to end up back in a wheelchair. And her manager, Meredith Hernandez, agreed. And, in fact, advocated in writing that a job share be considered as a reasonable accommodation. And, Your Honor, if reasonable is met in the request, the only way Sanofi gets to deny it is undue hardship. And that is the element where Mrs. Perdue met it here. And it certainly should have gone to the jury to decide to the extent there was an undue hardship. And to the extent there are questions of fact as to the reason it being denied. I mean, again, Sanofi did nothing from May of 2017 until September of 2017 to engage in the interactive process with a single offer. Unlike in Elledge, where Lowe's seemed to have bent over backwards to try to accommodate, had in writing potential accommodations that would work in conjunction with contacting his medical providers, Sanofi did none of that here. They were indifferent to the ADA. They didn't contact her medical providers at all to find out what would be effective. They offered nothing. They put her out to pasture, called short-term disability, and she didn't want to be there. She tried every three weeks to get back to work. And, Your Honors, the records reflect that. They said, go get a long-term disability and wrote her off. She wasn't ever approved for long-term disability. She was 45 years old when diagnosed and 50 when she was fired. This was someone who fought for her job to the very end, and Sanofi didn't care. And they violated the law because they absolutely didn't make any efforts to engage, find another accommodation, and absolutely could only deny the reasonable request under the ADA if they could demonstrate undue hardship.  It could go to the jury if they can demonstrate undue hardship, Your Honors. They can do it before a jury. This case should not have been granted summary judgment because the facts were all construed in the light most favorable to Sanofi, not Janet Perdue. All right. Thank you very much, Ms. Guester. And I want to thank all the counsel for their briefs and their argument. As you know, if you've been to the Fourth Circuit before, when we're not on video, we come down and shake your hand, which obviously we can't do today. So we'll hope that in the very near future you'll be able to come back and we can do that. So I'll get the clerk staff to now move us to our next case.
judges: G. Steven Agee, Julius N. Richardson, Allison J. Rushing